**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**KENNETH MARC PERALTA,**

    **Plaintiff,**

    vs.                                                                Civ. No. 17-1144 KK

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security,**

    **Defendant.**

## **MEMORANDUM OPINION AND ORDER**[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 17) filed March 5, 2018, in support of Plaintiff Kenneth Marc Peralta's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for Title II disability insurance benefits and Title XVI supplemental security income benefits. On June 14, 2018, Plaintiff filed his Motion to Remand or Reverse ("Motion"). (Doc. 22.) The Commissioner filed a Response in opposition on August 3, 2018 (Doc. 24), and Plaintiff filed a Reply on August 18, 2018. (Doc. 25.) The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Doc. 14.)

I. **Background and Procedural Record**

Claimant Kenneth Marc Peralta ("Mr. Peralta") alleges that he became disabled on March 27, 2013, at the age of forty-six because of diabetes type 1, kidney transplant, insomnia, high blood pressure, and anxiety. (Tr. 254, 257.[2]) Mr. Peralta completed the twelfth grade in 1984, and worked as a casino maintenance tech and counter top production employee. (Tr. 258.)

On July 1, 2013, Mr. Peralta protectively filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. (Tr. 91, 229-30.) Mr. Peralta also filed for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. (Tr. 92, 231-32.) Mr. Peralta's applications were initially denied on April 9, 2014. (Tr. 78-90, 91, 92, 93-105, 146-49, 150-53.) They were denied again at reconsideration on November 25, 2014. (Tr. 106, 107, 108-122, 123-137, 157-59, 160-63.) On December 18, 2014, Mr. Peralta requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 164-65.) The ALJ conducted a hearing on September 14, 2016. (Tr. 46-77.) Mr. Peralta appeared in person at the hearing with attorney representative Angela Adkins.[3] (*Id.*) The ALJ took testimony from Mr. Peralta (Tr. 52-70), and an impartial vocational expert ("VE"), Bonnie Ward. (Tr. 71-77.) On October 28, 2016, ALJ Doug Gabbard, II, issued an unfavorable decision. (Tr. 25-39.) On October 14, 2017, the Appeals Council issued its decision denying Mr. Peralta's request for review and upholding the ALJ's final decision. (Tr. 1-7.) On November 16, 2017, Mr. Peralta timely filed a Complaint seeking judicial review of the Commissioner's final decision. (Doc. 1.)

---

[2] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 17) that was lodged with the Court on March 5, 2018.

[3] Mr. Peralta is represented in these proceedings by Attorney Francesca MacDowell. (Doc. 1.)

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

> past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

### B. <u>Standard of Review</u>

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias,* 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). A decision is based on substantial evidence where it is supported by "relevant evidence

. . . a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

### III. Analysis

The ALJ made his decision that Mr. Peralta was not disabled at step five of the sequential evaluation. Specifically, the ALJ found that Mr. Peralta met the insured status requirements through December 31, 2018, and had not engaged in substantial gainful activity since his alleged onset date of March 27, 2013. (Tr. 30.) The ALJ determined that Mr. Peralta had severe impairments of uncontrolled diabetes mellitus, cervical degenerative disc disease, affective disorder, and anxiety disorder. (*Id.*) The ALJ also found "remaining" impairments to include loss of vision, proliferative retinopathy, end stage renal disease status post renal transplant, hypertension/high blood pressure, hyperlipidemia, hypercholesterolemia, elbow pain, bilateral shoulder pain, back pain, transient ischemic attack by history, insomnia, migraine headaches, ischemia, and possible multiple sclerosis. (Tr. 31.) The ALJ determined that Mr. Peralta did not have an impairment or combinations of impairments that met or medically equal the severity of a listing. (Tr. 32-33.) Proceeding to step four, the ALJ found that Mr. Peralta had the residual

5

functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), and that

> the undersigned limited the claimant to lifting and carrying no more than 50 pounds occasionally and 25 pounds frequently; standing and walking for about six hours and sitting for about six hours in an eight-hour workday, with normal breaks. The claimant is limited to unskilled work, which is simple, repetitive and routine; his supervision must be simple, direct, concrete and non-critical; interpersonal contact with supervisors and coworkers must be incidental to the work performed, *e.g.* assembly work. He can work at a consistent pace, if he has normal, regular work breaks; and he should have only occasional workplace changes and only incidental contact with the general public.

(Tr. 33-34.) Based on the RFC and the testimony of the VE, the ALJ concluded that Mr. Peralta was incapable of performing his past relevant work, but that there were jobs that existed in significant numbers in the national economy that the claimant could perform. (Tr. 37-39.) The ALJ, therefore, determined that Mr. Peralta was not disabled. (Tr. 39.)

In his Motion, Mr. Peralta argues (1) that the ALJ's RFC was not supported by substantial evidence; and (2) that the ALJ failed to resolve a conflict between the jobs the VE identified and the ALJ's RFC. (Doc. 22 at 5-25.) For the reasons discussed below, the Court finds the ALJ's RFC related to Mr. Peralta's exertional capacity is not supported by substantial evidence and that this case, therefore, requires remand.

### A. RFC Assessment

Mr. Peralta argues that the ALJ failed to properly consider his uncontrolled diabetes and related fatigue and weakness, the effects of his hypoglycemic events, and his lingering right-sided numbness, when he determined that Mr. Peralta was capable of performing medium level work. (Doc. 22 at 5-14.) Mr. Peralta asserts that the evidence demonstrates that his diabetes is uncontrolled despite his efforts to follow a healthy diet and engage in some exercise, that he consistently reported fatigue and weakness to his healthcare providers, that he started using a cane

6

after he experienced his first TIA, that he experienced a second TIA with lingering symptoms of right-sided numbness and weakness, and that the objective evidence prior to the ALJ's determination demonstrated the possibility that Mr. Peralta had multiple sclerosis. (*Id.*) Mr. Peralta argues that given his physical impairments, the ALJ's RFC should have been more limiting as to his ability to stand, walk, reach, and lift. (*Id.*) The Commissioner contends that the ALJ recognized that Mr. Peralta had some limitations, but appropriately declined to adopt additional limitations that he reasonably found were unsupported by the record as a whole. (Doc. 24 at 11-17.) In support, the Commissioner cites Mr. Peralta's relatively wide range of daily activities as reported to his mental healthcare providers, including spending time with his family, dating, watching movies, going to the casino, cooking, cleaning, and helping his family members and neighbors with household projects. (*Id.*)

RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, may cause physical or mental limitations or restrictions that may affect his capacity to do work-related physical and medical activities. 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p, 1996 WL 374184, at *2. In determining a claimant's RFC, the ALJ should first assess the nature and extent of the claimant's physical and mental limitations. 20 C.F.R. §§ 404.1545(b) and (c), 416.945(b) and (c). The ALJ is required to consider all of the claimant's impairments, including impairments that are not severe. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *see also Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). The RFC assessment must be based on *all* of the relevant evidence in the case record, such as medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, and effects of symptoms. SSR 96-8p, 1996 WL 374184, a *5. "[T]he ALJ must make specific findings," *Winfrey*

7

*v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996), that are "supported by substantial evidence." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. SSR 96-8p, 1996 WL 374184, at *7.

With respect to Mr. Peralta's physical impairments, the record demonstrates that Mr. Peralta (1) has a longstanding history of uncontrolled diabetes type 1 (Tr. 330-37, 391-94, 472-73, 561-565, 567, 581-89, 752, 756, 760, 769, 773, 777, 1118, 1123); (2) underwent a kidney transplant in 2004 as a result of his diabetes and must take antirejection medications (Tr. 341-48, 409-10, 657, 659-60, 926-27); (3) has experienced multiple hypoglycemic events as a result of his diabetes, one of which resulted in Mr. Peralta's losing consciousness, wrecking his car, and injuring his shoulder (Tr. 351-64, 476-77, 786-92, 1117-118); (4) has suffered transient ischemic attacks (mini strokes) and right-sided numbness (Tr. 489-99, 766-69, 770-73, 806-11); and (5) has clinical findings of and undergone testing for multiple sclerosis (Tr. 770-73, 774-77, 1113-116, 1130-31, 1137). Although the ALJ acknowledged these objective medical findings in his determination, he failed to address in his discussion how the medical evidence supported his RFC assessment that Mr. Peralta was capable of performing medium exertional work.[5]

Medical source opinion evidence in this case related to Mr. Peralta's physical impairments comes exclusively from nonexamining State agency medical consultants. Specifically, on initial review, on April 7, 2014, John Vorhies, M.D., reviewed the medical evidence record and

---

[5] "The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms." SSR 83-10, 1983 WL 31251, at *6.

determined that "claimant's physical impairments appear to have no more than a minimal effect on the ability to perform work activities." (Tr. 83, 98.) On November 22, 2014, at reconsideration, Michael Slager, M.D., reviewed the medical evidence record and opined that

> [t]he episode of transient right sided weakness resulted in no persistent residual deficits and may have been due to a migrainous hemiplegia. With regard to his renal transplant, his kidney function has been normal and he has tolerated immunosuppression without any complications or side effects noted. With regard to the allegations of visual impairment, vision was 20/25 without correction and VF's grossly normal. An argument can be made that the [claimant] should avoid the heaviest of exertion so as to avoid any dehydration, any degree of rhabdomyolysis, or injury that could affect his transplanted kidney. However, especially given that assessing for a medium level of work would make no decisional difference from the initial conclusion that he is physically non-severe, the initial non-severe evaluation is affirmed.

(Tr. 119, 134.) The ALJ accorded only *limited* weight to these opinions, because he concluded that Mr. Peralta's longitudinal history of uncontrolled diabetes mellitus, his episodes of hypoglycemia, and his testimony, all corroborated that Mr. Peralta's impairments were not non-severe, but were, in fact, severe. (Tr. 37.) The ALJ also noted elsewhere, in clear contrast to Dr. Slager's findings, that clinical evidence corroborated Mr. Peralta's allegations of "[r]esidual numbness, tingling and weakness" as a result of his TIAs, and that those symptoms had "persisted for the last 2 years." (Tr. 31.) Having come to those conclusions based on the objective medical evidence, the ALJ nonetheless adopted Dr. Slager's opinion that Mr. Peralta could engage in medium level work, which was presumably based on his opinion that Mr. Peralta's physical impairments were non-severe. In other words, having provided an appropriate explanation for *discounting* Dr. Slager's opinion, the ALJ, without any explanation, adopted Dr. Slager's assessed residual functional capacity regarding Mr. Peralta's ability to do work-related physical activities. This is confusing, but more significantly is error because in doing so the ALJ failed to adequately and specifically describe how his conclusions about the objective medical evidence supports his

9

RFC assessment. *Winfrey*, 92 F.3d at 1023; *see also Lawton v. Barnhart*, 121 F. App'x 364, 374 (10th Cir. 2005) (finding that the ALJ's RFC conclusions were not supported by substantial evidence because the ALJ did not specify the evidence he relied upon to support his conclusions).

Additionally, by adopting Dr. Slager's assessment that Mr. Peralta could engage in medium work, the ALJ also failed to address how more recent medical evidence of Mr. Peralta's deteriorating condition might have impacted Dr. Slager's opinion. For example, in the months following Dr. Slager's review of the medical evidence record, Mr. Peralta's diabetes remained uncontrolled (Tr. 752, 756, 760, 769, 773, 777, 1118, 1123); he suffered more bouts of hypoglycemia (Tr. 786-92, 1117-118); he experienced more incidents of right-sided hemiparesis and paresthesia (Tr. 766-69, 770-73, 806-11); and was determined to have objective evidence of multiple sclerosis (Tr. 853-55, 1130-31).[6] *See Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014) (noting the significance of a recent physician's examination which found more limitations than an examination by another physician two years prior); *see also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004 ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").

---

[6] The ALJ only briefly mentioned Mr. Peralta's "possible multiple sclerosis" diagnosis in March 2016. (Tr. 31.) In doing so, the ALJ commented that "a magnetic resonance imaging of the brain revealed subcortical and periventricular white matter disease but not evidence of acute demyelination." (*Id.*) The MRI at issue, however, demonstrated that the appearance of the white matter disease was "suggestive of underlying multiple sclerosis despite NO evidence for acute demyelination." (Tr. 783.) Additional testing was ordered, and on August 3, 2016, oligocional banding test results were positive. (Tr. 1131.) "Oligocional bands are present in approximately 95 percent of patients with multiple sclerosis[.]" (*Id.*) Mr. Peralta underwent a lumbar puncture on July 29, 2016 (Tr. 1137), but the results were not available in the Administrative Record. Mr. Peralta's attorney representative informed the ALJ at the Administrative Hearing that the results would not likely be available until November 2016. (Tr. 63.) Mr. Peralta submitted records to the Appeals Council after the ALJ rendered his decision on October 28, 2016, that evidenced an MS diagnosis on March 1, 2017. (Tr. 18-19.) The Appeals Council did not make the newly submitted records a part of the record, and Mr. Peralta has not raised this as an issue. In any event, the ALJ did not have the benefit of the medical records confirming Mr. Peralta's MS diagnosis. *See Padilla v. Colvin*, 525 F. App'x 710 (10th Cir. 2013) (unpublished) (finding that new evidence was temporally relevant when corroborated by evidence during the relevant period of time).

The ALJ also improperly relied on Mr. Peralta's putative "full daily activities and functionality" as substantial evidence to refute Mr. Peralta's disabling symptoms of his physical impairments. The ALJ primarily discounted Mr. Peralta's claims regarding his physical symptoms based on Mr. Peralta's reports to his mental healthcare provider that he spent time with his family, watched movies, went out on dates, took a train to visit his sister, helped his brother remodel his home, visited the casino, and exercised for 30 minutes each day. (Tr. 34, 36.) The ALJ's reliance on these activities, however, fails to account for the full context of the mental healthcare providers' notes, and fails to account for the significant objective medical evidence that supports and is consistent with Mr. Peralta's symptomatology. *Frey v. Bowen*, 816 F.2d 508, 516 (10th Cir. 1987) (finding that where objective medical evidence was "abundantly present" to support symptomology, the ALJ's reliance on "daily activities" to refute claimant's complaints was misplaced) (citing *Broadbent v. Harris*, 698 F.2d 407 (10th Cir. 1983) (wherein the Court held that a claimant who performed a few household tasks, had worked on his cars, and had driven on occasional recreational trips did not establish capacity for engaging in substantial gainful activity); and *Byron v. Heckler*, 742 F.2d 1232 (10th Cir. 1984) (holding that a claimant's jogging activity and intermittent work as a janitor is not inconsistent with complaints of pain in light of claimant's doctor's testimony about his pain))).

Here, Mr. Peralta began mental health counseling through Presbyterian Medical Services on July 21, 2014. (Tr. 419-20.) At intake, Mr. Peralta reported a history of increased anxiety following his kidney transplant in 2004, and even greater depressive and anxiety symptoms more recently since having a TIA on June 9, 2014, and learning his wife was having an affair and wanted a divorce. (Tr. 419-20, 425.) On July 29, 2014, LISW Deborah Bankson did an initial behavioral health assessment, and made Axis I diagnoses of dysthymic disorder and generalized anxiety

11

disorder. (Tr. 425-28.) She assigned a GAF score of 50.[7] (Tr. 427.) On the same date, Mr. Peralta began individual therapy with LMHC Lauren Hurtgen. (Tr. 431-33.) The Administrative Record demonstrates that Mr. Peralta remained in individual therapy with LMHC Hurtgen from July 29, 2014, through July 22, 2016. (Tr. 431-39, 452-53, 465-70, 673-77, 680-85, 688-90, 693-97, 701-11, 714-17, 722-26, 733-34, 930-35, 941-54, 960-68.) LMHC Hurtgen assisted Mr. Peralta with problem solving, cognitive behavioral issues, and stress management techniques, and provided therapeutic support. (*Id.*) LMHC Hurtgen encouraged Mr. Peralta to refocus his mind by engaging in positive self-care activities, including spending time with others, which Mr. Peralta did. (*Id.*) Despite Mr. Peralta's noted increased social activities and self-reported improvement, LMHC Hurtgen's notes indicate that Mr. Peralta's mental status remained unchanged throughout his therapy, as did his "stressors and/or supports of progress." (*Id.*) Further, LMFT Anne Lear prepared an updated behavioral health plan on July 14, 2015, one year after Mr. Peralta began therapy, and indicated that Mr. Peralta's depression remained severe. (Tr. 709-12.) LMFT Lear noted that given the persistence of Mr. Peralta's depression and anxiety, he could benefit from medication management and "psychoed[ucation] regarding diagnoses."[8] (Tr. 711.) LMFT Lear's Axis I diagnoses were major depressive disorder, single episode, severe without psychotic features, symptomatic – SMI, and anxiety disorder due to medical condition, chronic. (*Id.*) She assessed a

---

[7] The GAF is a subjective determination based on a scale of 100 to 1 of "clinician's judgment of the individual's overall level of functioning." *Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* (4th ed. 2000) at 32. A GAF score of 41-50 indicates serious symptoms (*e.g.,* suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). *Id.* at 34.

[8] On October 8, 2015, Mr. Peralta saw John C. Courtney, PsyD, MP, for psychiatric evaluation. (Tr. 728-32.) Dr. Courtney noted that Mr. Peralta presented with depressed mood, difficulty concentrating, difficulty falling asleep, fatigue, feelings of guilt, loss of appetite and restlessness, but denied diminished interest or pleasure. (Tr. 728.) Dr. Courtney noted that Mr. Peralta was anxious and unconsolable. (Tr. 730.) On November 2, 2015, Mr. Peralta saw Dr. Courtney for medication management. (Tr. 736-40.) Dr. Courtney assessed a GAF score of 55. (Tr. 736.) Mr. Peralta presented with a depressed mood, but reported feeling happier and that he hoped to go back to work. (*Id.*)

12

GAF score of 50.[9] (Tr. 712.) Thus, LMHC Hurtgen's therapy notes in context demonstrate that Mr. Peralta's mental status remained unchanged despite self-reported improvement and increased social activity. Additionally, Mr. Peralta testified that, although he reported to LMHC Hurtgen that he had "helped" his brother install a septic tank and with the remodeling of his home, he was only "there" and did not do any physical work. (Tr. 70.) Finally, even though Mr. Peralta reported engaging in sporadic household chores in 2015 and 2016, the Administrative Record demonstrates that as of August 2016, Mr. Peralta qualified for home health aide assistance due to his inability to manage his personal care and household chores. (Tr. 65-66, 1173.) The ALJ's characterization of Mr. Peralta's "rather full range of activities" and his "enjoy[ment of] life" as a basis for undercutting Mr. Peralta's claimed symptoms related to his physical impairments is misplaced and not supported by substantial evidence. *Frey*, 816 F.2d at 517.

In sum, the ALJ failed to explain and discuss how his evaluation and weighing of the medical source opinion evidence and his conclusions regarding the objective medical evidence related to Mr. Peralta's physical impairments support his RFC assessment that Mr. Peralta can perform medium exertional work. The ALJ also improperly relied on Mr. Peralta's daily activities as substantial evidence to refute Mr. Peralta's physical impairments. As such, the ALJ's RFC as to Mr. Peralta's physical impairments is not supported by substantial evidence and this case requires remand. *Lawton*, 121 F. App'x at 374.

---

[9] *See* fn. 7, *supra*.

### B. Remaining Issues

The Court will not address Mr. Peralta's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### IV. Conclusion

For the reasons stated above, Mr. Peralta's Motion to Reverse and Remand for Rehearing With Supporting Memorandum (Doc. 22) is **GRANTED.**

_____
**KIRTAN KHALSA**
**United States Magistrate Judge,**
**Presiding by Consent**